Slip Op. 21–160

UNITED STATES COURT OF INTERNATIONAL TRADE

---

|  | : |  |
| --- | --- | --- |
| BLUESCOPE STEEL LTD., BLUESCOPE STEEL (AIS) PTY LTD., and BLUESCOPE STEEL AMERICAS, INC., | : : : | |
| | : | |
| Plaintiffs, | : | Before: Richard K. Eaton, Judge |
| | : | |
| v. | : | Court No. 19-00057 |
| | : | |
| UNITED STATES, | : | **PUBLIC VERSION** |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| UNITED STATES STEEL CORP., ET AL., | : | |
| | : | |
| Defendant-Intervenors. | : | |

---

## OPINION AND ORDER

[Final Results are remanded to Commerce.]

Dated: November 30, 2021

*Christopher A. Dunn* and *Daniel L. Porter*, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington D.C., argued for Plaintiffs BlueScope Steel Ltd., BlueScope Steel (AIS) Pty Ltd., and BlueScope Steel Americas, Inc. With them on the brief was *Gina Colarusso*.

*Kelly A. Krystyniak*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. With her on the brief were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Tara K. Hogan*, Assistant Director. Of counsel on the brief was *Spencer Neff*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Sarah E. Shulman*, Cassidy Levy Kent (USA) LLP, of Washington, D.C., argued for Defendant-Intervenor United States Steel Corp. With her on the brief was *Thomas M. Beline*.

Eaton, Judge: Before the court is the motion for judgment on the agency record of Plaintiffs

BlueScope Steel Ltd., an Australian steel company, and its affiliates BlueScope Steel (AIS) Pty

Ltd. (its Australian producer and exporter), and BlueScope Steel Americas, Inc. (its U.S. affiliated importer) (collectively, "Plaintiffs").[1] By their motion, Plaintiffs challenge the final results of the U.S. Department of Commerce's ("Commerce" or the "Department") first administrative review of the antidumping duty order on hot-rolled steel flat products from Australia. *See Certain Hot-Rolled Steel Flat Products From Australia*, 84 Fed. Reg. 18,241 (Dep't Commerce Apr. 30, 2019) ("Final Results") and accompanying Issues and Decision Mem. (Apr. 23, 2019) ("Final IDM"), PR 122; *see also Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom*, 81 Fed. Reg. 67,962 (Dep't Commerce Oct. 3, 2016) ("Order"). Jurisdiction is found under 28 U.S.C. § 1581(c) (2018) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018).

Plaintiffs contend that Commerce's use of "total" adverse facts available[2] in the Final Results cannot be sustained. *See* Pls.' Mem. Supp. Mot. J. Agency R., ECF No. 34 ("Pls.' Br."); Pls.' Reply, ECF No. 43. That is, Plaintiffs maintain that Commerce's decision to replace all of

---

[1]     Parent company BlueScope Steel Ltd. has two other affiliates that are not parties in this action: BlueScope Steel Distribution Pty Ltd. (an Australian affiliate), and Steelscape LLC (an affiliated U.S. processor). The parent company and its two Australian affiliates BlueScope Steel (AIS) Pty Ltd. and BlueScope Steel Distribution Pty Ltd. were collapsed by Commerce at the investigation stage and are referred to in this opinion collectively as "BlueScope." *See Certain Hot-Rolled Steel Flat Products From Australia*, 81 Fed. Reg. 53,406, 53,407 (Dep't Commerce Aug. 12, 2016) (final determination). The collapsing determination is not at issue here.

[2]     "Total adverse facts available" is not defined by statute or agency regulation. Commerce uses this term "to refer to [its] application of adverse facts available . . . to the facts respecting *all of respondents' production and sales information that the Department concludes is needed for an investigation or review*." *Nat'l Nail Corp. v. United States*, 43 CIT __, __, 390 F. Supp. 3d 1356, 1374 (2019) (emphasis added) (citation omitted). In other words, Commerce assigns an antidumping rate based entirely on facts selected using an adverse inference, ignoring all of a respondent's information. The court declines to adopt Commerce's language here. The dispositive question is whether Commerce's decision to replace all of BlueScope's information with facts available, while applying adverse inferences, was supported by substantial evidence and otherwise in accordance with law. *See* 19 U.S.C. §§ 1516a(b)(1)(B)(i), 1677e(a), (b).

BlueScope's information with facts available and then apply adverse inferences to those facts is based on a misinterpretation of the antidumping statute and is unsupported by substantial evidence. According to Plaintiffs, BlueScope fully and accurately complied with Commerce's requests for information, and to the extent that there were any deficiencies in its initial responses to Commerce's questionnaires, it remedied them by timely responses to the supplemental questionnaires issued by the Department when permitted to do so. *See* Pls.' Br. 7; *see also* 19 U.S.C. § 1677m(d). Plaintiffs ask the court to remand the Final Results for a recalculation of the BlueScope's dumping margin without the use of either facts available or adverse inferences.

For its part, Defendant maintains that Commerce's use of adverse facts available is supported by substantial evidence and otherwise in accordance with law, and asks the court to sustain the Final Results. *See* Def.'s Resp. Pls.' Mot. J. Agency R., ECF No. 39; *see also* U.S. Steel Corp.'s Resp. Pls.' Mot. J. Agency R., ECF No. 41.

Because Commerce's decision to replace all of BlueScope's submitted information with facts available was not supported by substantial evidence, the court remands the Final Results.

## BACKGROUND

In 2017, BlueScope Steel Ltd., BlueScope Steel Americas, Inc., and Steelscape LLC (the U.S. affiliated processor) asked Commerce to conduct an administrative review of BlueScope Steel Ltd.'s and its affiliates' sales under the Order during the period of review from March 22, 2016 to September 30, 2017. BlueScope's Req. for Admin. Rev. (Oct. 31, 2017), PR 1. In response, Commerce initiated the first administrative review. *See Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 82 Fed. Reg. 57,705 (Dep't Commerce Dec. 7, 2017).

On December 7, 2017, Commerce issued its initial questionnaire to BlueScope. *See* Dep't Commerce Initial Quest. (Dec. 7, 2017) ("Initial Quest."), PR 4. Subsequently, Commerce issued Section A supplemental questionnaires relating to the quantity and value of BlueScope Steel Ltd.'s and its affiliates' U.S., home market, and third-country market sales. *See* Dep't Commerce Sec. A Suppl. Quest. (Feb. 2, 2018), PR 34; Dep't Commerce Secs. A-C Suppl. Quest. (July 2, 2018) ("Secs. A-C Suppl. Quest."), PR 75. In addition, Commerce issued supplemental questionnaires asking for further information and clarifications as to BlueScope's sales in the home market (Section B) and the United States (Section C). *See* Dep't Commerce Secs. B & C Suppl. Quest. (Feb. 26, 2018), PR 47; Dep't Commerce Secs. B-E Suppl. Quest. (Apr. 9, 2018) ("Secs. B-E Suppl. Quest."), PR 57; *see also* Secs. A-C Suppl. Quest.

BlueScope timely responded to all of Commerce's questionnaires.[3] Importantly, in its initial responses and in its supplemental responses, BlueScope reported that all of its U.S. sales of subject merchandise were made by its affiliated company BlueScope Steel (AIS) Pty Ltd. ("Australian Iron & Steel") to another affiliated company, BlueScope Steel Americas, Inc. BlueScope further stated that BlueScope Steel Americas entered the merchandise and then resold the product to Steelscape LLC, BlueScope's U.S. affiliated processor. *See, e.g.*, BlueScope's Sec. A Quest. Resp. at 14-15. Steelscape then "further processed the subject merchandise into coated

---

[3]        For reference, BlueScope's responses to Commerce's initial and supplemental questionnaires are cited and short-cited as follows: BlueScope's Sec. A Quest. Resp. (Jan. 8, 2018), CR 1-12, PR 16-19; BlueScope's First Sec. A Suppl. Quest. Resp. (Feb. 22, 2018), PR 44-45; BlueScope's First Secs. B & C Suppl. Quest. Resp. (Mar. 12, 2018), PR 51-52; BlueScope's Secs. B-E Suppl. Quest. Resp. (Apr. 30, 2018), CR 158-189, PR 64-65; BlueScope's Sec. A-C Suppl. Quest. Resp. for Sec. A (July 16, 2018) ("BlueScope's Second Sec. A Suppl. Quest. Resp."), PR 78-79; BlueScope's Secs. A-C Suppl. Quest. Resp. for Secs. B & C (July 20, 2018) ("BlueScope's Second Secs. B & C Suppl. Quest. Resp."), PR 82-83; BlueScope's Secs. A-C Suppl. Quest. Partial Resp. (July 24, 2018), PR 84-85.

and galvanized steel" before making "the first [U.S.] sale to an unrelated customer." *See* BlueScope's Sec. A Quest. Resp. at 3. In other words, throughout the review, BlueScope reported that its only sales in the United States to unaffiliated customers[4] were of further processed merchandise, processed and sold by its affiliate Steelscape.

Commerce published the preliminary results of its review on November 14, 2018. *See Certain Hot-Rolled Steel Flat Products From Australia*, 83 Fed. Reg. 56,817 (Dep't Commerce Nov. 14, 2018) ("Preliminary Results"), and accompanying Preliminary Decision Mem. (Nov. 1, 2018) ("PDM"), PR 95. It published the Final Results on April 30, 2019. *See* 84 Fed. Reg. at 18,241.

In the Final Results,[5] Commerce determined that necessary information was missing from the record because BlueScope had failed to provide, in the form and manner requested by the

---

[4]     Under the antidumping statute, Commerce determines if goods are being sold, or are likely to be sold, in the United States at less than fair value by finding the amount by which normal value (home market price) exceeds export price (U.S. price) or constructed export price. *See* 19 U.S.C. § 1673. The margin between the two is used to calculate an antidumping duty rate. *Id.* § 1677(35)(A).

When a respondent producer-exporter has no sales of subject merchandise to unaffiliated customers in the United States during the period of review, Commerce looks to "constructed export price." *Id.* § 1677a(b) (emphasis added) ("The term 'constructed export price' means the price at which the subject merchandise is first sold (or agreed to be sold) in the United States before or after the date of importation by or for the account of the producer or exporter of such merchandise or by a seller affiliated with the producer or exporter, *to a purchaser not affiliated with the producer or exporter*, as adjusted[.]").

[5]     After the Preliminary Results were issued, BlueScope asked Commerce to conduct verification of its submitted data, contending that this would resolve the "misunderstandings" on which the Preliminary Results were based. *See* BlueScope's Req. for Verification (Nov. 9, 2018) at 2, PR 100. In the Final Results, Commerce declined to conduct a verification. *See* Final IDM at 16 ("Commerce cannot conduct verification when the record is missing necessary information and verification is not an opportunity to provide new information."). For Commerce, BlueScope's responses were deficient not because of a misunderstanding, but because information was missing from the record.

Department, usable information (1) to determine the total quantity and value of U.S. sales (Section A), and (2) to reconcile a mismatch between the total U.S. sales quantity reported in Section A, and the total quantity of sales reported for BlueScope's U.S. sales in Section C (*i.e.*, the U.S. sales database). Commerce further found that the record lacked a usable home market sales reconciliation of its home market sales databases (Section B) because of deficiencies in BlueScope's final consolidated Section B database. *See* Final IDM at 11, 18.

The Department ultimately concluded that none of BlueScope's information was usable and that all of its submissions should be replaced with facts available, and applied adverse inferences to all of the facts. *See* Final IDM at 18. Commerce did not address Section D of BlueScope's questionnaire responses, concerning cost of production, in either the Preliminary or Final Results. Thus, Commerce did not calculate an antidumping margin, but instead assigned an adverse facts available antidumping duty rate of 99.20 percent.[6] *See* Final IDM at 15-16, 19.

Plaintiffs commenced this action to challenge Commerce's decision to use facts available to replace all of BlueScope's information, and to apply adverse inferences to those facts.[7]

---

[6]    The margin alleged in the petition was 99.20 percent—the highest rate on the record. *See* PDM at 10-11 ("Commerce's practice in reviews, in selecting a rate as total [adverse facts available], is to use the highest rate on the record of the proceeding . . . ."); *see also* 19 U.S.C. § 1677e(b)(2) ("An adverse inference under paragraph (1)(A) may include reliance on information derived from . . . the petition."). In other words, because Commerce determined that "total" adverse facts available should be used in this case, it simply assigned an adverse rate to the BlueScope. *See* 19 U.S.C. § 1677e(a) (directing that, if "necessary information is not available on the record," Commerce "shall . . . use the facts otherwise available in reaching the applicable determination"); *see also id.* § 1677e(b)(1) (directing that, if Commerce makes the separate, subsequent determination that a respondent "has failed to cooperate by not acting to the best of its ability to comply with a request for information from the [Department]," it "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available").

[7]    While the use of facts available and the application of an adverse inference is what the statute directs under the proper circumstances, this substitution of the facts sought in an investigation or review is a common feature of Commerce's determinations. While there is some

## STANDARD OF REVIEW

The court will sustain a determination by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## LEGAL FRAMEWORK

Under the antidumping statute, Commerce determines if goods are being sold, or are likely to be sold, in the United States at less than fair value by finding the amount by which normal value exceeds export price or constructed export price. *See* 19 U.S.C. § 1673. The margin between the two is used to calculate an antidumping duty rate. *Id.* § 1677(35)(A).

During an administrative review, "[i]f . . . necessary information is not available on the record, or . . . an interested party or any other person . . . withholds information that has been requested by [Commerce]," "fails to provide such information by the deadlines for submission of the information or in the form and manner requested," or "significantly impedes a proceeding," Commerce uses the facts otherwise available in place of the missing information. 19 U.S.C. § 1677e(a)(1)-(2)(A)-(C).

---

confusion as to the legality of this practice, there can be little doubt as to the truth of this Court's observation that a "rate, standing alone, is not a 'fact.'" *Gerber Food (Yunnan) Co. v. United States*, 31 CIT 921, 944 (2007), *superseded by statute as discussed in Deosen Biochemical Ltd. v. United States*, 42 CIT __, __, 307 F. Supp. 3d 1364, 1372 (2018), *aff'd*, 767 F. App'x 1008 (Fed. Cir. 2019). Nor can there be any doubt that the statute provides a roadmap for the source of adverse facts available. *See* 19 U.S.C. § 1677e(b)(2) ("An adverse inference under paragraph (1)(A) may include reliance on information derived from— (A) the petition, (B) a final determination in the investigation under this subtitle, (C) any previous review under section 1675 of this title or determination under section 1675b of this title, or (D) any other information placed on the record.").

Where Commerce determines that the use of facts available is warranted, it may apply adverse inferences to those facts when replacing an interested party's information only if it makes the requisite additional finding that that party has "failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b)(1). The application of *adverse* facts available is, then, a two-step process. *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003) ("The statute has two distinct parts respectively addressing two distinct circumstances under which Commerce has received less than the full and complete facts needed to make a determination. . . . The focus of subsection (a) is respondent's *failure to provide information*. The reason for the failure is of no moment.").

Thus, generally only after Commerce has determined that there is information missing, creating a gap in the record, can it apply an adverse inference when selecting among the facts otherwise available. *See id.* (alteration in original) ("As a separate matter, subsection (b) permits Commerce to 'use an inference that is adverse to the interests of [a respondent] in selecting from among the facts otherwise available,' only if Commerce makes the separate determination that the respondent 'has failed to cooperate by not acting to the best of its ability to comply.' The focus of subsection (b) is respondent's *failure to cooperate to the best of its ability,* not its failure to provide requested information."). Importantly, the use of facts available generally requires a finding of missing information. The application of an adverse inference is based on a respondent's behavior.

At all times, the overriding purpose of the statute is to determine an accurate antidumping margin for a respondent when one is warranted. *See Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*, 45 CIT __, __, 519 F. Supp. 3d 1224, 1234 (2021) (quoting *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins *as accurately*

*as possible*."). In line with this purpose, Commerce generally must provide proper notice to respondents when their responses are deficient, and provide an opportunity to fix deficiencies, before relying on facts available. *See* 19 U.S.C. § 1677m(d) ("If [Commerce] determines that a response to a request for information under this subtitle does not comply with the request, [Commerce] shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency . . . ."); *see also* 19 U.S.C. § 1677e(a) (emphasis added) (requiring that Commerce "shall, *subject to section 1677m(d) of this title*, use the facts otherwise available in reaching the applicable determination").

## DISCUSSION

In the Final Results, Commerce determined that it was necessary to use facts available with respect to *all* of BlueScope's submitted information, because it found that it was not possible to calculate a dumping margin for BlueScope without (1) a usable total consolidated U.S. sales quantity for the period of review, (2) a usable U.S. sales reconciliation, and (3) a usable home market sales reconciliation. *See* Final IDM at 11. Before concluding that it needed to replace all of BlueScope's information and apply adverse inferences to the facts available, Commerce was required to support, by substantial evidence, its conclusion that there was no usable information on the record. *See Nat'l Nail Corp. v. United States*, 43 CIT __, __, 390 F. Supp. 3d 1356, 1373 (2019) (citing *Nippon Steel*, 337 F.3d at 1381) ("[T]he use of 'facts otherwise available,' to fill in gaps, applies when necessary information is lacking, regardless of the reason for its absence.").

The court finds that Commerce failed to justify its use of facts available in two respects. First, as to BlueScope's U.S. sales quantity and value reporting, the Department failed to

demonstrate that BlueScope's responses created a gap in the record. Second, as to BlueScope's U.S. and home market sales reconciliations, the Department did not comply with 19 U.S.C. § 1677m(d), which requires it to provide a respondent with notice of deficient responses, and an opportunity to remediate, before deciding to rely on facts available. Because the use of facts available was not warranted, there was no opportunity for the Department to apply adverse inferences. Accordingly, because the replacement of all BlueScope's information with adverse facts available was unsupported by substantial evidence, the court remands for further action consistent with this Opinion and Order.

## I.    Commerce Failed to Show that There Was a Gap in the Record with Respect to the Quantity and Value of BlueScope's U.S. Sales

In Section A of its initial questionnaire, Commerce asked BlueScope to provide general information about the quantity and value of all of its U.S., home market, and third-country market sales. *See* Initial Quest. (Sec. A). In the Final Results,[8] Commerce found that BlueScope's quantity and value reporting for its U.S. sales was not submitted in the form and manner requested by the Department.[9]

---

[8]    Commerce did not change its facts available determination as to all of BlueScope's information, nor its decision to apply adverse inferences to those facts, between the Preliminary and Final Results. *See generally* PDM; Final IDM.

[9]    Commerce cited the language of subsections (A)-(C) of the facts available statute when stating its grounds for rejecting BlueScope's quantity and value information. *See, e.g.*, Final IDM at 11 ("[B]ecause BlueScope withheld information requested by Commerce, failed to report its [quantity and value] information in the form and manner requested by Commerce - despite multiple requests for this information - thereby significantly impeding this review, recourse to the facts available was appropriate under [19 U.S.C. § 1677e(a)(2)(A)-(C)]."). The Department points to nothing, however, that would provide evidence substantial enough to support a finding that BlueScope significantly impeded the proceeding. Therefore, the court will focus on the Department's discussion of what information BlueScope provided, and the form and manner of its

When determining whether to use facts available because a respondent has not provided usable information, Commerce must explain "exactly what information is missing from the record." *Jiangsu Zhongji Lamination Materials Co. v. United States*, 43 CIT __, __, 405 F. Supp. 3d 1317, 1333 (2019); *see also* 19 U.S.C. § 1677e(a)(2)(B).[10] For Commerce to reasonably declare the existence of a gap, it is not enough that the information be present but that Commerce objects to its form. *See, e.g.*, *Agro Dutch Indus. Ltd. v. United States*, 31 CIT 2047, 2055 (2007) (not reported in Federal Supplement) ("If the deficiency [is] cured . . . , whatever reasons for its having been deficient earlier in the proceeding are rendered irrelevant, because there is now no longer a 'gap' in the information necessary for the proceeding.").

From the outset of the review, BlueScope's narrative responses stated that, for purposes of determining constructed export price, only its U.S. affiliate Steelscape made U.S. sales (of further processed merchandise) during the period of review. For purposes of determining how *subject* merchandise entered the United States, BlueScope has consistently stated that only its Australian affiliate Australian Iron & Steel sold subject merchandise to the United States, in an affiliated

_____

questionnaire responses, when determining whether Commerce reasonably relied on facts available. *See* 19 U.S.C. § 1677e(a)(2)(A)-(C).

[10]     Commerce shall use facts available when a respondent "fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) [corroboration of secondary information] *and (e) of section 1677m of this title*." 19 U.S.C. § 1677e(a)(2)(B) (emphasis added). Subsection 1677m(e) limits the application of § 1677e(a)(2)(B) by providing that Commerce "shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by the [Department]" if certain circumstances exist. *See id.* § 1677m(e)(1)-(5) (providing that such information shall be used if it is timely, verifiable, "not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination," provided by a respondent that has cooperated "to the best of its ability," and "can be used without undue difficulties").

transaction. *See, e.g.*, BlueScope's Sec. A Quest. Resp. Ex. A-1; BlueScope's First Sec. A Suppl. Quest. Resp. at 1 & Ex. SA1-1.

In addition, BlueScope eventually provided charts linking its affiliates (by name) to the figures it reported for total quantity and value of U.S. sales. In response to the Department's final supplemental questionnaire for quantity and value (Section A), BlueScope timely provided two charts—one showing totals for its constructed export price sales, and entries of subject merchandise in the United States ("Final Quantity and Value Chart"), and one showing the total amount of Steelscape's sales of further processed merchandise, and the total quantity of Australian Iron & Steel's sales of subject merchandise into the United States through affiliated transactions ("Final Reconciliation Chart").[11] *See* BlueScope's Second Sec. A Suppl. Quest. Resp. Ex. SA3-1 (Final Quantity and Value Chart) & Ex. SA3-2 (Final Reconciliation Chart).

A review of the charts themselves reveals that the quantity of Steelscape's sales of further processed merchandise to unaffiliated U.S. customers exactly matches the quantity of constructed export price sales. Similarly, the quantity of Australian Iron & Steel's sales to BlueScope Steel Americas exactly matches the quantity of entries into the United States. *See* BlueScope's Sec. A Quest. Resp. at 14; BlueScope's Second Sec. A Suppl. Quest. Resp. Ex. SA3-1 & Ex. SA3-2.

BlueScope believed that the Final Reconciliation Chart, combined with its other submissions, showed that *only Steelscape made sales that could serve as the basis of constructed export price*. BlueScope also believed that it had consistently supported its claim that Australian

---

[11]    Along with the Final Reconciliation Chart, BlueScope submitted a shipment list, showing, *inter alia*, invoice numbers, quantities, and values of sales made by Australian Iron & Steel to BlueScope Steel Americas. *See* BlueScope's Second Sec. A Suppl. Quest. Resp. Ex. SA3-2. The total quantity and value reported in this list matches the total quantity and value for sales made by Australian Iron & Steel to BlueScope Steel Americas reported in the Final Reconciliation Chart.

Iron & Steel's sales to BlueScope Steel Americas represented the *only subject merchandise entered into the United States during the period of review*. *See* BlueScope's Second Sec. A Suppl. Quest. Resp. at 2-4; *see also* BlueScope's Case Br. (Dec. 14, 2018) at 12-13, PR 106. The two charts seem to support BlueScope's narrative statement that there was only one channel of distribution, linking all constructed export price sales to Steelscape, and all entries of subject merchandise to sales from Australian Iron & Steel to BlueScope Steel Americas.

In the Final Results, however, Commerce disregarded BlueScope's U.S. sales quantity and value reporting, and found that the record lacked (1) "the total quantity and value of sales during the [period of review] by Steelscape of further processed merchandise made using the subject merchandise that entered during the [period of review]"; and (2) "the total quantity and value of the subject merchandise that entered into the United States during the [period of review]." Final IDM at 12. Despite BlueScope's submission of the Final Quantity and Value Chart and the Final Reconciliation Chart, Commerce found that BlueScope never provided additional responsive information in the form and manner requested. *See* Final IDM at 12 ("We twice requested that BlueScope . . . separately report [total quantity and value for Steelscape's sales and for entries of subject merchandise made during the period of review]. . . . However, on both occasions, BlueScope simply referred Commerce to the consolidated [quantity and value] chart that we had previously found to be deficient."). Commerce rejected the Final Reconciliation Chart, finding that it was "was not responsive to Commerce's request because it was not submitted in the form and manner requested by Commerce, nor does the quantity reported in the reconciliation tie to the U.S. sales database." Final IDM at 12-13.

As stated, Commerce is justified in using facts available where necessary information is missing from the record or is otherwise unavailable. *See* 19 U.S.C. § 1677e(a). While a

respondent's failure to provide information in the "form and manner" requested by the Department may be a reason why necessary information is missing from the record, Commerce must explain "exactly what information is missing from the record." *Jiangsu*, 43 CIT at __, 405 F. Supp. 3d at 1333. Moreover, subject to certain conditions, Commerce "shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by the [Department]." 19 U.S.C. § 1677m(e).

Here, the Department failed to support, with substantial evidence, its use of facts available to replace BlueScope's U.S. sales quantity and value reporting. The Department offered no underlying reasoning, beyond a cursory objection to "form and manner," when refusing to rely on BlueScope's Final Reconciliation Chart. It did not substantively address the Final Reconciliation Chart, which appears to provide the information Commerce requested with respect to Steelscape's total quantity and value of constructed export price sales, and total quantity and value of subject merchandise sold to the United States by Australian Iron & Steel (in an affiliated transaction).

Further, Commerce's "form and manner" analysis focuses on BlueScope's perceived lack of cooperation throughout the review, rather than the usability of the information it eventually produced. Under the facts of this case, whether or not BlueScope cooperated is only relevant *after* Commerce has first determined that necessary information is missing from the record. *See Nippon Steel*, 337 F.3d at 1381 (alteration in original) ("The statute has two distinct parts respectively addressing two distinct circumstances under which Commerce has received less than the full and complete facts needed to make a determination. . . . [S]ubsection (b) permits Commerce to 'use an inference that is adverse to the interests of [a respondent] in selecting from among the facts otherwise available,' only if Commerce makes the separate determination that the respondent 'has failed to cooperate by not acting to the best of its ability to comply.'"); *see also Agro Dutch Indus.*,

31 CIT at 2055 (finding that the reasons for a cured deficiency are "rendered irrelevant, because there is now no longer a 'gap'").

The court is not satisfied that necessary information is missing here, or that the form and manner of BlueScope's responses created a gap in the record. The court had no trouble concluding, for example, that BlueScope represented that Steelscape was its only source of sales to unaffiliated customers in the United States, and the quantity and value of those sales.[12] BlueScope's submissions, particularly its Final Quantity and Value Chart and its Final Reconciliation Chart, do not support Commerce's conclusion that necessary information was missing from the record. Indeed, the evidence that Commerce itself cites to support this ultimate conclusion is primarily the information found in BlueScope's responses and exhibits submitted *prior* to the Final Reconciliation Chart.[13] *See* Final IDM at 12-13. By failing to discuss the information provided in the Final Reconciliation Chart, or explain why BlueScope's evidence should not be credited,

---

[12]         Somewhat confusingly, Commerce stated in the Final Results that

contrary to BlueScope's claim, the [quantity and value] charts submitted for its individual affiliates include information for both sales in the United States and home market. Indeed, during the review, we informed BlueScope that the information reported in the [quantity and value] charts submitted for its individual affiliates was inconsistent with its narrative response that only [Australian Iron & Steel] had any exports of subject merchandise to the United States.

Final IDM at 13 (footnote omitted). Yet the record appears consistent with BlueScope's claims that only Steelscape made sales that could be the basis of constructed export price. *See* BlueScope's Second Sec. A Suppl. Quest. Resp. Ex. SA3-1 (showing the total quantity of constructed export price sales as 8,825.67) & Ex. SA3-2 (showing the total quantity of Steelscape's sales to unaffiliated customers as 8,825.67).

[13]         Specifically, Commerce relies on BlueScope's initial and first supplemental questionnaire responses to Section A submitted prior to the Final Reconciliation Chart, and the Final Quantity and Value Chart (submitted with the Final Reconciliation Chart in response to Commerce's second supplemental questionnaire for Section A). *See* Final IDM at 12.

Commerce failed to support, by substantial evidence, its finding that BlueScope never provided a usable total consolidated U.S. sales quantity for the period of review.

On remand, Commerce shall use BlueScope's quantity and value (Section A) submissions, unless it can support with substantial evidence its finding that the form and manner of BlueScope's submissions prevents it from determining the total consolidated quantity of constructed export price sales and their origin.

## II.    Commerce Failed to Justify Its Use of Facts Available Under 19 U.S.C. § 1677e(a) Because It Was First Required to Comply with the Requirements of § 1677m(d)

Commerce further found that it lacked a usable U.S. sales reconciliation and a usable home market sales reconciliation because of certain changes BlueScope had made to its U.S. and home market sales databases, submitted in response to the Department's supplemental questionnaires over the course of the review. For Commerce, these changes were unsolicited and unexplained, and resulted in irreconcilable differences in BlueScope's overall sales reporting, such that all of its information had to be replaced with facts available.

Commerce's reliance on facts available based on perceived deficiencies in BlueScope's sales database was premature, however, because the court is not satisfied that the Department first complied with the requirements of 19 U.S.C. § 1677m(d).

"The failure by Commerce to provide a respondent with the statutorily required notice of a deficiency in its questionnaire response 'can render the decision [to apply facts available] unsupported by substantial evidence and otherwise contrary to law.'" *Hyundai Steel Co. v. United States*, 45 CIT __, __, 518 F. Supp. 3d 1309, 1322 (2021) (alteration in original) (citation omitted) (cleaned up). To give respondents an opportunity to remedy deficient responses, Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to

the extent practicable, provide that person with an opportunity to remedy or explain the deficiency." 19 U.S.C. § 1677m(d).

As to both BlueScope's U.S. sales reconciliation and its home market sales reconciliation, the court first finds that the changes BlueScope made to its sales databases were solicited by the Department. Moreover, because Commerce provided no explanation as to why it would not have been practicable to give BlueScope notice of, and an opportunity to fix, the deficiencies identified in its responses, the court remands so that the Department can comply with the requirements of § 1677m(d).

### A.    U.S. Sales Reconciliation: Changes Made to U.S. Sales (Section C) Database

Here, the presence or absence of returned sales information, and the claimed creation of a mismatch between BlueScope's Section A (quantity and value) and Section C (U.S. sales) responses, led Commerce to conclude that the record lacked a usable U.S. sales reconciliation. *See* Final IDM at 14. For Commerce, the lack of a U.S. sales reconciliation was further justification of its decision to replace all of BlueScope's information with facts available and to apply adverse inferences to those facts.

During the course of the review, Commerce issued a second supplemental questionnaire concerning Section C (U.S. sales), asking BlueScope to state whether there had been any "positive or negative adjustments to any of [its] U.S. sales during the [period of review] and [to] submit documentation to support [its] response." *See* Secs. B-E Suppl. Quest. at 11. In response, BlueScope identified certain U.S. sales, made by its affiliate Steelscape, that it had removed from its sales database. BlueScope stated that these returned sales had been "deleted from BlueScope's U.S. database" because the merchandise had been returned after the end of the period of review. *See* BlueScope's Secs. B-E Suppl. Quest. Resp. at 35-36.

In its narrative response, BlueScope identified the invoice numbers associated with the sales that were returned or partially returned. *See* BlueScope's Secs. B-E Suppl. Quest. Resp. at 35-36; *see also* Preliminary Propriety Info. Mem. (Nov. 1, 2018) ("BPI Memo") at 1 n.4, CR 264, PR 96 (identifying the same invoice numbers BlueScope had listed in its response). Further, BlueScope stated in its case brief (submitted before the Final Results) that the difference between the updated database and the total quantity of Steelscape's sales was the exact quantity of the returned sales.[14] *See* BlueScope's Case Br. at 19.

BlueScope understood these changes to be responsive to Commerce's request that it report its U.S. sales "net of returns." *See* BlueScope Steel Ltd.'s Rebuttal to Pet'r's Req. for Application of Total AFA (Sept. 6, 2018) ("BlueScope's Rebuttal") at 7, PR 90; *see also* Initial Quest. at C-15 (asking BlueScope to "[r]eport the information requested concerning the quantity sold" as "net of returns where possible"). BlueScope further argued that the modification to its U.S. sales database was too insignificant to justify Commerce's use of facts available. The difference between the two databases was 0.24 percent—less than one quarter of one percent—of BlueScope's total sales quantity. *See* BlueScope's Case Br. at 19; Final IDM at 7; *see also* BPI Memo at 1 n.3.

Plaintiffs primarily claim that the Department failed to comply with the notice and remediation requirements of 19 U.S.C. § 1677m(d) before using facts available. *See* Pls.' Br. 42-43. After BlueScope made the changes to its Section C database that created the mismatch between its responses, and identified the invoices that had been fully or partially returned, Commerce issued

---

[14]    BlueScope identified 21.77 metric tons as the quantity of returned merchandise: the exact difference between the final quantity of U.S. sales of further processed merchandise sold by Steelscape, 8,825.67 metric tons, and the adjusted quantity reported in its U.S. sales database, 8,803.90 metric tons, or only 0.24 percent of its total U.S. sales. *See* BlueScope's Case Br. at 19; *see also* BPI Memo at 1 n.3 (identifying the same difference in quantity of metric tons between BlueScope's Section A and Section C responses); Final IDM at 7 (noting 0.24 percent as the difference stated by BlueScope).

another supplemental questionnaire for Sections A and C. *See* Secs. A-C Suppl. Quest. In this questionnaire, Commerce made no mention of the mismatch between BlueScope's updated U.S. sales database and its latest quantity and value chart, even though it asked questions about other aspects of BlueScope's Sections A and C reporting. *See* Secs. A-C Suppl. Quest. at 3-4, 13-15. Further, Commerce asked no questions about the invoice numbers BlueScope listed in its prior response identifying the sales it removed from the U.S. sales database. For Plaintiffs, "[i]f Commerce had required further documentation about the two returned sales, it needed to inform BlueScope of those requests and to provide BlueScope an opportunity to provide that documentation." Pls.' Br. 43.

In the Final Results, Commerce found that BlueScope's modifications to its U.S. sales database to reflect returned Steelscape sales were both unsolicited and unexplained, and lacked supporting documentation. *See* Final IDM at 14 (footnote omitted) ("BlueScope's reporting in its U.S. sales database does not support BlueScope's explanation that these certain [products documented in the invoices it identified] were fully returned and the sales associated with these invoices were removed from the U.S. sales database. Further, the record lacks any documentation to support BlueScope's claim that these sales were returned."). Based on the resulting mismatch between BlueScope's Section C database and its Section A quantity and value reporting, and the perceived deficiency of its supporting explanation (including a lack of documentation), Commerce concluded that BlueScope failed to submit a usable U.S. sales reconciliation.

The Department "satisfies its obligation under § 1677m(d) to place the respondent on notice of the nature of a deficiency in its initial questionnaire response where a supplemental questionnaire '*specifically point[s] out and request[s] clarification of [the] deficient responses*,' and *identifies the information needed to make the required showing*." *Hyundai Steel*, 45 CIT at __,

518 F. Supp. 3d at 1322-23 (alterations in original) (emphasis added) (quoting *NSK Ltd. v. United States*, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007)).

Here, Commerce did not notify BlueScope of the deficiencies that formed the basis of its eventual facts available determination, with respect to BlueScope's response to the Department's initial request to report its sales "net of returns." Nor did the Department request remediation of the deficiencies. Specifically, Commerce did not ask BlueScope to clarify the mismatch between the Section A total quantity and Section C total quantity. Nor did Commerce request further documentation from BlueScope, even though it knew of the removal of sales, and the invoice numbers associated with them, more than six months before the Preliminary Results.

Rather, Commerce waited to disregard BlueScope's U.S. sales information because of the mismatch in quantity figures and the lack of supporting documentation—and indeed, to replace *all* of BlueScope's information with facts available—until it was too late for BlueScope to remediate any deficiency in its reporting. In its decision memoranda, Commerce gave no reason as to why it would have been impracticable to ask further questions about the mismatch, or to request additional documentation to support BlueScope's claim that the sales were returned, in the final supplemental questionnaire covering both sections relevant to the U.S. sales reconciliation, which was issued more than three months before the Preliminary Results. Under these circumstances, Commerce acted in violation of the statute by rejecting BlueScope's information and relying on facts available without giving it notice of the nature of the deficiencies in its responses, and an opportunity to remediate the mismatch between Section A and Section C. *See* 19 U.S.C. § 1677e(a) (emphasis added) (requiring that Commerce "shall, *subject to section 1677m(d) of this title*, use the facts otherwise available in reaching the applicable determination").

Therefore, the court finds that Commerce failed to comply with the requirements of § 1677m(d). The court remands on this issue and directs Commerce to give BlueScope an opportunity to remedy specific deficiencies identified in its Section A and Section C responses, before determining whether there is a usable U.S. sales reconciliation on the record.

**B.      Home Market Sales Reconciliation: Changes Made to Home Market Sales (Section B) Database**

Commerce found further deficiencies in BlueScope's home market information (Section B). In response to Commerce's initial and supplemental questionnaires for Section B, BlueScope submitted four consolidated home market sales databases over six months. Commerce concluded that the fourth and final consolidated home market sales database, submitted more than three months before the Preliminary Results were issued, included "significant unsolicited and unexplained changes" to the data. *See* Final IDM at 14. These changes had, in Commerce's view, so modified the information for the majority of BlueScope's home market sales that the record lacked a usable home market reconciliation, because the consolidated database could not be reconciled with its previous submissions. *See* Final IDM at 14-15; BPI Memo at 2 n.7.

For Plaintiffs, the alleged "changes" that Commerce had identified with regard to the majority of BlueScope's home market sales were made in compliance with Commerce's instructions. That is, Plaintiffs claim that the sole modification found in BlueScope's fourth and final consolidated database was the addition of two months of data to its individual databases, as requested by Commerce in a supplemental questionnaire. *See* BlueScope's Second Secs. B & C Suppl. Quest. Resp. at 3 (emphasis added) ("BlueScope has provided *as requested* updated home market sales files for [Australian Iron & Steel], BSL, and [BlueScope Steel Distribution] to include October and November 2017 sales, which are the two months following the conclusion of the [period of review]."). Plaintiffs argue:

> Other than adding two months of sales, . . . none of the underlying data BlueScope submitted changed. . . . [I]t is apparent that what appeared to be "changes" in Commerce's eyes resulted from the fact that Commerce was simply comparing *sequence numbers* in the response. . . . When an additional sale results in additional sequence numbers, the price, quantity and CONNUM[15] of the new sequence number necessarily changes from the old sequence number. The underlying data do not change; only the sequence number does.

*See* Pls.' Br. 37-38. In other words, for Plaintiffs, the changes to the consolidated database were inevitable because, when BlueScope added sales to the individual company and affiliate databases, these additions flowed into the consolidated database. *See* BlueScope's Rebuttal at 10 (explaining that the consolidated database "is simply a pasting together of each of the individual home market company databases").

To account for such shifting effects, BlueScope included information in its home market sales databases—individual and consolidated—for Commerce's use in understanding the changes caused by its addition of the two months of sales data. This information included a particular database field or "variable," "SEQH_OLD," that BlueScope used in its individual databases and had been using to link old and new databases as early as six months prior to the issuance of the Preliminary Results. *See* BlueScope's Rebuttal at 10 n.16 ("[SEQH_OLD] has been present since BlueScope's April 30, 2018, response. The individual company database [sequence] number . . . directly ties to . . . the consolidated databases."); *see also* BlueScope's Secs. B-E Suppl. Quest. Resp. Ex. SB2-1.

Plaintiffs contend that, because of BlueScope's history of using "SEQH_OLD," and the explanations it provided throughout the review, Commerce's rejection of its final consolidated

---

15      A CONNUM is a number composed of a series of digits each of which corresponds to a physical characteristic, as defined by Commerce in a questionnaire. Each CONNUM is assigned to a unique product and allows the Department "to match identical and similar products across markets." *See Manchester Tank & Equip. Co. v. United States*, 44 CIT __, __ n.3, 483 F. Supp. 3d 1309, 1312 n.3 (2020) (citation omitted).

home market database—and all of its other home market submissions—was contrary to § 1677m(d).[16] *See* Pls.' Br. 42 ("Commerce never provided BlueScope with timely notice of what it considered to be deficiencies in BlueScope's responses or an opportunity to remedy or explain those alleged deficiencies."). For Plaintiffs, if Commerce found that BlueScope was unable to tie "the fourth consolidated home market sales database to the previously submitted databases," it should have asked BlueScope "to show it how to do so before it issued its preliminary determination." Pls.' Br. 42. Commerce's finding was particularly unreasonable, Plaintiffs contend, because BlueScope had submitted its fourth and final consolidated database more than three months prior to the Preliminary Results, and had explained in its rebuttal brief submitted two months prior to the Preliminary Results how the individual and consolidated databases could be understood.[17] *See* BlueScope's Rebuttal at 10 n.16 ("[BlueScope] assume[s] that the Department itself was aware of [the use of SEQH_OLD in BlueScope's individual databases], as BlueScope has received no questions related to this issue from the Department, despite a lengthy and detailed supplemental [questionnaire].").

---

[16]     As has been noted, Commerce "shall promptly inform the person submitting [a deficient] response of the nature of the deficiency and . . . to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency . . . ." 19 U.S.C. § 1677m(d).

[17]     BlueScope explained in its rebuttal brief that its consolidated database could not be viewed in a "vacuum." Rather, it identified the relationship between a number of sequence-related fields, to instruct Commerce how to track the overall changes that occurred because of the added sales. *See* BlueScope's Rebuttal at 10 & n.16 ("In [its individual company and affiliate] databases, BlueScope clearly provided a separate variable 'SEQH_OLD' . . . that tied to the prior-submitted database . . . . The individual company database SEQH number, then directly ties to field SELLER and SEQH_COMPANY variables in the consolidated databases."). In other words, while SEQH_OLD did not appear in the final consolidated database, it was still present in the individual databases that contained all of the underlying data reported in consolidated form.

Commerce had asked BlueScope to "report all home market sales in the two months following the last month of U.S. sales . . . [by] revis[ing its] database to include all sales by BlueScope in Australia in October and November 2017." Secs. A-C Suppl. Quest. at 4. In the Preliminary and Final Results, however, Commerce rejected BlueScope's fourth and final consolidated home market sales database, and all of its other home market databases, because the Department found that, contrary to its instructions to *only* submit "an additional two months of home market sales data," BlueScope had submitted a new consolidated database in which over seventy percent of sequence numbers for home market sales had changed in one way or another.[18] *See* Final IDM at 15 ("While Commerce may have requested that BlueScope submit an additional two months of home market sales data, we did not request that BlueScope make changes to the home market sales data already submitted on the record."); *see also* PDM at 9; BPI Memo at 2 n.7.

As for the database field "SEQH_OLD," which BlueScope claimed would show Commerce the original sequence number of a sale that had been shifted by the addition of new data, the Department found that this field itself did not appear in the changed consolidated database. *See* Final IDM at 15. Thus, Commerce insists that it "was never able to tie the consolidated home market sales database to the previously submitted databases during this review," and there was no usable home market reconciliation on the record. *See* Final IDM at 15.

As noted, before Commerce may use facts available, it must comply with the notice and remediation requirements of § 1677m(d). *See* 19 U.S.C. §§ 1677e(a), 1677m(d) (requiring that, if

---

[18]    In the BPI Memo accompanying the Preliminary Results, Commerce stated that, "[f]or over 70 percent of the sequence numbers, significant information, including the invoice number, price, quantity, and CONNUM" changed between the home market sales dataset submitted May 7, 2018, and the dataset submitted July 20, 2018. *See* BPI Memo at 2 n.7. "Further, [the July 20 dataset] appears to include additional sequence numbers for sales occurring during the period of review. However, due to the significant changes to the datasets, it is unclear which sales have been added." BPI Memo at 2 n.7.

a response is deficient, Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency"). Generally, "[t]he failure by Commerce to provide a respondent with the statutorily required notice of a deficiency in its questionnaire response 'can render the decision to apply facts available unsupported by substantial evidence and otherwise contrary to law.'" *Hyundai Steel*, 45 CIT at __, 518 F. Supp. 3d at 1322 (citation omitted) (cleaned up).

      The court finds that Commerce has failed to support, with substantial evidence, its decision to disregard BlueScope's home market sales information. First, it is worth noting that, at no point, does Commerce assert that it was not practicable to afford BlueScope the opportunity to remedy or explain the deficiencies it found. Absent such a finding, it was unreasonable for the Department to replace *all* of BlueScope's information with facts available, when, up until that point, BlueScope had timely responded to Commerce's requests for clarification and modification of its home market data. Moreover, Commerce never reveals why it did not notify BlueScope of the nature of the deficiency earlier than in the Preliminary Results, even though Commerce was familiar with the use of the SEQH_OLD variable and had been for months. Commerce was also aware of the allegedly deficient consolidated database, and BlueScope's method of "linking" the individual and consolidated databases, two months prior to the Preliminary Results. *See* BlueScope's Rebuttal at 10 & n.16.

      Commerce's conclusion that BlueScope's submissions were unsolicited and unexplained is inconsistent with the Department's supplemental questionnaire's brief and non-specific request for additional data: "[P]lease report all home market sales in the two months following the last month of U.S. sales, as originally instructed. Specifically, please revise your database to include

all sales by BlueScope in Australia in October and November 2017." Secs. A-C Suppl. Quest. at

4-5. Commerce simply misunderstands its own questionnaire if it believes it was soliciting only a

discrete additional two months of home market sales in a separate database. The words "please

revise your database to include all sales by BlueScope in Australia in October and November

2017" do not permit that interpretation of what was being sought.

This Court has observed that "[b]roadly drawn initial or supplemental questionnaires may

not sufficiently place a respondent on notice of the nature of the deficiency, and deprive it of the

opportunity to remedy that deficiency." *Hyundai Steel*, 45 CIT at __, 518 F. Supp. 3d at 1322.

Here, Commerce did not put BlueScope on notice of any deficiency concerning the addition of

two months of sales through its questionnaires. The Department did not address how added data

might change sequence numbers or other information before rejecting BlueScope's explanations

on the subject. Nor did Commerce address whether or not BlueScope's method of tracking changes

(*i.e.*, the use of "SEQH_OLD," or the explanation in its rebuttal brief) might be inadequate.

Thereafter, Commerce did not give BlueScope an opportunity to remedy the perceived deficiencies

as required by the statute. Thus, Commerce's decision to use facts available as to BlueScope's

home market information is not supported by substantial evidence, and the court remands on this

issue for the Department to give BlueScope notice of its deficient responses and an opportunity to

remediate.[19]

---

[19]    As noted, the court does not reach Plaintiffs' challenge to Commerce's application
of adverse inferences to the facts available. Commerce found that BlueScope had failed to
cooperate to the best of its ability by withholding information from the Department, and otherwise
not complying with its instructions, and thus, all of its information should be replaced with facts
available selected using adverse inferences. *See* Final IDM at 17 ("BlueScope withheld
information that had been requested by Commerce by failing to provide it in the form and manner
requested which significantly impeded the proceeding under [the statute]."). Commerce must first
determine what, if any, gaps exist in the record, particularly with respect to BlueScope's

Finally, it bears noting that, in the Preliminary Results (and the accompanying BPI Memo), Commerce explained that its rejection of *all* of BlueScope's submissions was in response to the perceived deficiency of its final consolidated home market sales database. *See* PDM at 9 ("Rather than providing clarification about the previously submitted home market sales databases, the revisions to the fourth consolidated home market sales database have made the record even more unclear and calls into question the reliability of all the databases provided by BlueScope."); BPI Memo at 2 n.8 ("The significant changes to [the final home market sales database] call into question the reliability of all databases and reconciliations submitted by BlueScope."). It is unclear from the Final Results if Commerce's facts available determination continued to rely on this reasoning, but Commerce continued to disregard all of BlueScope's information without addressing the sufficiency of BlueScope's responses to Section D (cost of production) of the Department's questionnaires. *See generally* PDM & Final IDM. In light of the court's finding that Commerce has failed to establish the existence of a gap in BlueScope's home market sales reporting, this far-reaching, unexplained rejection of all of its submissions is likewise unsupported by substantial evidence.

## CONCLUSION and ORDER

For the foregoing reasons, it is hereby

---

submissions of quantity and value information, U.S. sales, and home market sales. Only if the Department substantiates the existence of a gap may it turn to the question of adverse inferences. BlueScope's cooperation (or lack thereof) is only relevant if information is, in fact, missing from the record. *See Guizhou Tyre Co. v. United States*, 43 CIT ___, ___, 389 F. Supp. 3d 1315, 1320 (2019) ("[B]efore Commerce can apply [adverse facts available], it must first determine under § 1677e(a) that information is missing from the record *and* that the gap was caused by a respondent's failure to cooperate.").

**ORDERED** that the Department's use of facts available, under 19 U.S.C. § 1677e(a) based on BlueScope's alleged withholding of requested information by failing to provide it in the form and manner requested, is remanded for the agency to determine whether there was in fact a gap in the record; it is further

**ORDERED** that the Department shall use BlueScope's quantity and value (Section A) submissions, absent a reasoned explanation as to why the form and manner of its submissions prevents the Department from discerning (1) the total quantity and value of U.S. sales of further processed merchandise made by Steelscape LLC; (2) whether Steelscape made the only sales that could serve as the basis of constructed export price during the period of review; (3) the total quantity and value of subject merchandise entered into the United States; and (4) whether sales by Australian Iron & Steel to BlueScope Steel Americas represented the total quantity and value of those entries; it is further

**ORDERED** that, on remand, Commerce shall comply with its obligation, under 19 U.S.C. § 1677m(d), to notify BlueScope of the nature of the alleged deficiencies in its Section A and Section C responses concerning the U.S. sales reconciliation, and provide an opportunity to remediate; it is further

**ORDERED** that, on remand, Commerce shall likewise notify BlueScope of the nature of the alleged deficiencies in its Section B responses concerning its home market sales reconciliation, and provide an opportunity to remediate; it is further

**ORDERED** that if, on remand, Commerce continues to find that the use of facts available is warranted, and makes the additional, distinct finding that the application of adverse inferences is warranted because BlueScope failed to cooperate "to the best of its ability," under 19 U.S.C. § 1677e(b), then it shall support this finding with substantial evidence; and it is further

Court No. 19-00057                                                               Page 29

**ORDERED** that Commerce's remand redetermination shall be due ninety (90) days following the date of this Opinion and Order; any comments to the remand results shall be due thirty (30) days following the filing of the remand results; and any responses to those comments shall be filed fifteen (15) days following the filing of the comments.

<u>/s/ Richard K. Eaton</u>
Judge

Dated:          November 30, 2021
               New York, New York